

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/27/2021

| | | |
|---|---|---|
| IN RE: § | | |
| ALFRED JACKSON § | CASE NO: 19-33423 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| GREGORY J CANNELLA § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 20-03004 | |
| § | | |
| ALFRED JACKSON § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

Before the Court is the complaint of Gregory J. Canella seeking to deny the discharge of the debtor Alfred Jackson pursuant to 11 U.S.C. § 727(a)(2)(A). Canella believes that Alfred Jackson intended to hinder, delay and to defraud himself and other creditors when he deeded his homestead to George Lee in lieu of foreclosure on December 7, 2018. Because of that belief, he has filed the instant adversary requesting that defendant Alfred Jackson's bankruptcy discharge be denied as the transfer occurred less than one year before the bankruptcy petition was filed and based on badges of fraud. Jackson and his wife purchased their residence at 1811 Kirby, Houston, Texas (hereinafter "Kirby") in 1999 and in December of 2018 transferred the home to George Lee pursuant to a deed in lieu of foreclosure. However, they continued to live in the property until April of 2019. In April of 2019, the debtor's spouse entered into a two-year lease, and they both then moved to a home at 6266 Woods Bridge, which was purchased by Lee for that purpose.[1] Lee is now their landlord. These transactions appear suspicious as Jackson and Lee continued to have a contractual relationship and Jackson continued to live in the Kirby

---

[1] The home at 6266 Woods Bridge was found by Jackson's spouse for their relocation.

property after he transferred it to Lee.  Additionally, he and his wife had underlying agreements to both profit from the sale of Kirby, if they obtained a buyer for the property post-deed in lieu[2] and there was an option to purchase the residence at 6266 Woods Bridge.[3]  The underlying intent of the transfer of Kirby, the debtor's residence and homestead since its purchase, is the only real issue before the court, that is whether the December 2018 transfer of real property by deed in lieu of foreclosure was done with the actual intent to delay or defraud creditors.  For the reasons so stated, the Court finds that the creditor has failed to meet his burden and that the debtor did not have actual intent to defraud his creditors when he transferred the home by deed in lieu of foreclosure.

This adversary proceeding was commenced on January 7, 2020. The defendant is the debtor in the underlying bankruptcy proceeding.

In 2016, Alfred Jackson, alongside his wife, Sybil, borrowed money from the First National Bank of Beeville and signed deeds of trust to secure payment. These deeds gave Kirby as collateral for repayment of the loans. The Jacksons purchased Kirby over 20 years ago, using this property as their homestead and primary family residence.  Due to financial difficulties, the Jacksons could not pay the notes secured by Kirby. On October 17, 2017, the Jacksons received a "notice of acceleration" from the First National Bank of Beeville requiring payments totaling $2,647,150.62 with accruing interest and attorney fees. A foreclosure date was set for February 06, 2018. After delaying this date several times, a final foreclosure date was set for June 05, 2018.

Prior to this final foreclosure date, Jackson was introduced to a hard money lender,

---

[2] This was an oral agreement, but it did not occur.  The court finds that Jackson had the intent to sell the property post deed in lieu and that he was unable to find a purchaser and that his inability is an indication of a market value of the Kirby property of $3,300,000.  The court finds this to be the value of the property as of the deed in lieu date.
[3] ECF 60-23, "During the term of Lease, Landlord gives the Tenant the Option to Purchase the property for $890,000."  The lease expires April of 2021.  Tenant does not appear to have exercised the option at this time.

George Lee, who agreed to purchase the notes from the bank and to pay the real estate taxes that were due on the property, in order to avoid the foreclosure sale. In addition, Mr. Lee required that the Jacksons execute a Forbearance Agreement[4]. As part of the agreement, George Lee agreed to forbear from exercising his right of foreclosure until January 04, 2019 and allow the Jacksons to continue to reside in the Kirby Property. In exchange, Jackson agreed to pay monthly installments of $24,898.00, and a forbearance fee. On the date of the agreement, the amount owed by Jackson totaled $2,900,731.78. During the period of forbearance, the Jacksons unsuccessfully tried to sell their residence. Prior to the end of the forbearance period of January 4, 2019, as set out in the forbearance agreement, on December 7, 2018, the Jacksons signed a deed in lieu of foreclosure and delivered it to Lee (the "Lee Transfer"). It is this transaction which is at dispute.

Prior to filing bankruptcy on April 30, 2019, and a second case on June 29, 2019, several judgments were entered against Jackson, including one by Gregory Cannella, the plaintiff in this instant adversary. A judgment was also entered against Jackson in Case No. DC-17-01114 in the 298th Judicial District Court of Dallas County, Texas. That court appointed Andrew R. Korn as a receiver to collect on the judgment at some time prior to March 2019. This receiver executed on Jackson's assets while he still resided at Kirby, and after he moved to 6266 Woods Bridge Way. The parties stipulated to the admission of the Homestead Affidavit as Release of Judgment Lien, stating that Kirby is the homestead of Jackson and that it serves as a release of the judgment lien as to Kirby.[5]

Cannella alleges Jackson is not entitled to a discharge, pursuant to 11 U.S.C. § 727(a)(2)(A) due to the Lee Transfer taking a valuable piece of property out of the bankruptcy

---

[4] ECF No. 67-6
[5] ECF No. 60-2

estate. It is the debtor's position that a discharge should be granted because Kirby was not transferred with the intent to defraud creditors. Rather, he wanted to avoid a foreclosure of his homestead, which had been long encumbered by a mortgage. After numerous attempts to consummate a sale of Kirby, and a looming foreclosure date, Jackson agreed to transfer the property to the hard money lender.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C § 1334(b). 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district.[6] In the Southern District of Texas, General Order 2012–6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

## LEGAL ANALYSIS

The purpose of 11 U.S.C. § 727(a)(2)(A) is "to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankruptcy estate."[7] A denial of discharge under 11 U.S.C. § 727(a)(2)(A) consists of two elements: (1) the debtor must have transferred or concealed property; (2) with the intent to hinder, delay, or defraud creditors.[8] The creditor objecting to discharge bears the burden of proof on all elements.[9] To prevail, the objecting creditor must show, by a preponderance of evidence, that that (1) a

---

[6] 28 U.S.C. § 157(a)
[7] *Pavy v. Chastant (In re Chastant),* 873 F.2d 89, 90 (5th Cir.1989)
[8] 11 U.S.C. § 727(a)(2); *Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240 (9th Cir.1997); *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir.1993).
[9] FED. R. BANKR. P. 4005; *FDIC v. Sullivan (In re Sullivan),* 204 B.R. 919, 938 (Bankr.N.D.Tex.1997)

transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate.[10]

Here, the parties have stipulated that Kirby, the homestead of the debtor, was transferred to George Lee on December 7, 2018. Therefore, the Court looks to whether there was actual intent to hinder, delay or defraud a creditor.[11] A discharge may not be denied pursuant to 11 U.S.C. § 727(a)(2)(A) unless the court finds actual intent to hinder, delay, or defraud creditors. Prior courts have outlined several "badges of fraud" which may evidence an actual intent to defraud. In the Fifth Circuit, these include "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry."[12] One of these factors may be sufficient in finding actual intent; an accumulation of several factors strongly indicates that the debtor possessed requisite intent.[13]

This Court has previously determined that badges of fraud were present (ECF No. 49). First, Jackson has admitted that at the time of the transfer of Kirby, he had incurred debt beyond his ability to pay. Second, Jackson had recently been sued by two separate parties.[14] Third,

---

[10] *Matter of Chastant*, 873 F.2d 89, 90 (5th Cir. 1989)
[11] "intent to hinder or delay" means "an intent to improperly make it more difficult for creditors to reasonably collect on their debts.: In re Womble, 108 Fed. Appx. 993 (5th Cir. 2004).
[12] *Pavy v. Chastant (In the Matter of Chastant),* 873 F.2d 89, 91 (5th Cir.1989).
[13] *FDIC v. Sullivan (In re Sullivan),* 204 B.R. at 940; *Cullen Center Bank & Trust v. Lightfoot (In re Lightfoot),* 152 B.R. 141, 148 (Bankr.S.D.Tex.1993).
[14] The court infers that the lis pendens discussed at trial, which impeded the sale of the Kirby property relates to one of these lawsuits, however the record is unclear.

Jackson has stated he was insolvent.[15] The Court weighs the remaining badges of fraud, as follows: (1) Was there a lack of, or inadequate, consideration? No, the Jacksons received forgiveness of debt in an amount greater than $2.9 million ($2,737,019 – Beeville notes purchased by George Lee in June 2018, plus $175,024 – property taxes paid by George Lee). On the date of transfer, Jackson's obligations under the forbearance agreement approximated an additional $270,000.00, including accrued interest on the notes and additional property taxes.[16] The transaction allowed the Jacksons to avoid losing Kirby to foreclosure;[17] (2) Was there a familial, friendship, or close associate relationship between the parties? No, George Lee was a hard money lender, who had been introduced to Jackson just prior to the scheduled June 5, 2018 foreclosure sale. (3) Did debtor retain possession, benefit, or use of the properties in question? Yes, but not for any fraudulent reason. Jackson resided at the Kirby Property, alongside his wife, as tenants at will, with the consent of Lee for approximately four months after the date of the Lee Transfer. In addition, during this time, Jackson testified that he continued to try to sell Kirby for an amount that would pay off Lee, still in an attempt to avoid a foreclosure of Kirby. (4) Was the financial condition of the party sought to be charged both before and after the transaction in question? Although the Court has previously determined this factor is present, the Court notes that the property was encumbered with more than $2.9 million in mortgage debt in December

---

[15] ECF No. 41 at 65.
[16] This amount is basically the same as the court's opinion on the Kirby property's market value.
[17] The court notes the varying evidence regarding the valuation of the Kirby property. Arguably the property based on sales offers was valued between $4.3 million [the "Cohen" offer, ECF 60-2] and $3.2 million [the "Lee" offer Ex. 60-5]. However, irrespective of the value of the property the court finds Jackson was motivated to achieve the maximum value for his Kirby residence by sale, however he was impeded in doing so by a lis pendens that was not introduced into evidence and only discussed at trial tangentially. The court finds that this lis pendens impeded potential sales and the market value of the property. The ability of any potential buyer to obtain title insurance and ensure a lack of future litigation affected Jackson's ability to sell and the market value of the home. Jackson needed funds from the sale, or the home would be foreclosed, and he would receive nothing. Additionally, he needed to move his household and to obtain a new residence. That Jackson was forced or accepted an offer that was perhaps below market was due to his poor financial condition as well as his inability to remove a lis pendens against his homestead. To the court this is not an indication of actual intent to hinder, delay or defraud creditors but an indication of the debtor's financial distress and therefore his lack of any other reasonable options as to the sale of his long time residential homestead.

2018. Three weeks after the time of the Lee Transfer, there was evidence that estimated that the value equaled this amount. Neither party adduced any evidence to show that debtor would have received anything from Kirby had he allowed the foreclosure action to proceed in June 2018, prior to the Lee Transfer. (5) Was there the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors? As examined previously, two separate parties had received judgments again Jackson. Prior to the filing of the bankruptcy, a receiver was appointed to execute on the judgments, and the receiver collected some assets to pay towards those judgments.[18] (6) The general chronology of events and transactions under inquiry? This factor weighs in debtor's favor. Jackson testified that he signed the forbearance agreement to avoid foreclosure, not because of the debt owed to Cannella.

     Overall, the analysis favors Jackson inasmuch as the transfer of Kirby did not make it more difficult for creditors to reasonably collect on their debts. There was no evidence that the creditors would have been able to reach any equity in the debtor's homestead. However, Jackson is not without his faults. Jackson was not a credible witness pertaining to matters involving George Lee. Rather his testimony pertaining to the matters from early 2018 through the filing of the bankruptcy highlights a lack of knowledge over the events he participated in. Further, he initially filed incomplete or inaccurate schedules in the bankruptcy case, and a false affidavit. His credibility is therefore lacking. Despite this, the Court does not find fault in his intention in transferring Kirby to Lee. Had Jackson done nothing, the most likely result would have been the loss of Kirby to foreclosure by the First National Bank of Beeville in June 2018, as well as the rest of his non-exempt property, as the court appointed receiver had already attached personal

---

[18] Plaintiff's Exhibit 60-2

property on March 29 and April 26, 2019, respectively.[19] By Lee purchasing his mortgage and paying the outstanding taxes on Kirby, and by his execution of the forbearance agreement, Jackson gave himself a chance to try to retain some value out of Kirby. Jackson's intent was honest, not fraudulent. Like almost all debtors, Jackson should have done a better job of documenting his assets and transactions in his schedules, but the Court does not believe that the transfer of Kirby was made in an attempt to defraud his creditors.  He may have made unwise decisions based on his financial difficulty, however there was no actual intent to hinder, delay or defraud creditors in the described transactions.

The Court will grant debtor a discharge.  The relief requested by Cannella is in all things denied.

SIGNED: 01/27/2021.

_____
Jeffrey P. Norman
United States Bankruptcy Judge

---

[19] ECF No. 60-29, pages 34-43.